2007-NMSC-059

172 P.3d 162

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Jacob GONZALES, Defendant–Appellant.**

No. 29,623.

Supreme Court of New Mexico.

Oct. 31, 2007.

Law Offices of Nancy L. Simmons, P.C., Nancy L. Simmons, Albuquerque, NM for Appellant.

Gary King, Attorney General, Andrew S. Montgomery, Assistant Attorney General, Santa Fe, NM, for Appellee.

## OPINION

CHÁVEZ, Chief Justice.

{1} Defendant Jacob Gonzales was convicted of first-degree murder, shooting at a motor vehicle resulting in great bodily harm, and tampering with evidence. He raises three arguments on appeal. First, the jury verdict of guilty of murder in the first degree without specifying whether the jury relied on the theory of willful and deliberate murder or felony murder subjected Defendant to double jeopardy when the jury also found him guilty of the predicate felony, shooting at a motor vehicle resulting in great bodily harm. Second, that he was denied effective assistance of counsel because trial counsel neither moved for a continuance to pursue a missing witness nor requested an imperfect self-defense jury instruction. Finally, that the trial court committed reversible error by denying jury instructions on self-defense and defense of habitation. We hold that Defendant was subjected to double jeopardy, and we thus vacate his felony conviction of shooting at a motor vehicle resulting in great bodily harm. We also find that Defendant has not made a prima facie case of ineffective assistance of counsel, but Defendant may pursue habeas corpus proceedings on this issue. Finally, we reject Defendant's argument that the trial court erred in denying self-defense and defense of habitation jury instructions.

## I. BACKGROUND

{2} On Thanksgiving Day, Defendant Jacob Gonzales and his brother, Mario Rudolfo, were involved in a violent altercation with family members of Defendant's girlfriend, Sara Montour. Sara and Defendant lived together in a trailer, and they had been arguing throughout Thanksgiving Day. In the midst of the argument, Sara went to her parents' home and told some of her family members about the argument. Sara asked her family for help in retrieving some of her belongings from the trailer. That evening, the Montour family, including Sara's father, Angelo; her mother, Darlene; her brother, Eli; and Eli's girlfriend, Pamela Martinez, drove together to Defendant's trailer to help recover Sara's belongings. When they arrived, Angelo and Eli Montour went inside the trailer, while Darlene and Pamela waited in the family van.

{3} An altercation then took place in the trailer between Angelo, Eli, Defendant, and Defendant's brother, the details of which are disputed. It is clear, however, that Angelo and Defendant's brother were involved in a struggle for a rifle, which discharged inside the trailer. Subsequently, Angelo and Eli left the trailer and returned to the van. As they were driving away from the trailer, several gunshots were fired at the van. Angelo and Eli sustained non-fatal gunshot wounds, and Pamela died from a gunshot wound to the back of her head.

{4} Defendant was charged with first-degree murder of Pamela Martinez based on willful and deliberate murder under NMSA 1978, Section 30-2-1(A)(1) (1994), or, in the alternative, based on felony murder under Section 30-2-1(A)(2). As a predicate to felony murder, Defendant was also charged with shooting at a motor vehicle resulting in great bodily harm to Pamela Martinez under NMSA 1978, Section 30-3-8(B) (1993).[1] The alternative bases for convicting Defendant of first-degree murder were set forth in the jury instructions. The jury returned a general verdict of guilty of first-degree murder,

but did not indicate on which theory it relied in convicting Defendant. The trial judge, however, sentenced Defendant to life imprisonment for willful and deliberate murder under Section 30-2-1(A)(1). Defendant was also convicted of and sentenced to nine years' imprisonment for shooting at a motor vehicle resulting in great bodily harm.[2]

## II. DISCUSSION

### A. Double Jeopardy

{5} Defendant contends that his right to be free from double jeopardy was violated when the jury returned a general verdict of guilty of first-degree murder and also found him guilty of shooting at a motor vehicle resulting in great bodily harm. Defendant argues that there was insufficient evidence for the jury to find first-degree murder based on willful and deliberate murder, and thus the jury must have relied on felony murder. Accordingly, Defendant maintains that he was subjected to double jeopardy by being convicted of both felony murder and the underlying felony, shooting at a motor vehicle resulting in great bodily harm. The State disagrees, contending that any double jeopardy problem was resolved when the trial judge sentenced Defendant to willful and deliberate first-degree murder. We review Defendant's double jeopardy claim de novo. *State v. Bernal*, 2006–NMSC–050, ¶ 6, 140 N.M. 644, 146 P.3d 289 (citing *State v. Andazola*, 2003–NMCA–146, ¶ 14, 134 N.M. 710, 82 P.3d 77).

{6} A jury can return a first-degree murder conviction even if the jurors do not agree on the underlying theory. *State v. Salazar*, 1997–NMSC–044, ¶ 32, 123 N.M. 778, 945 P.2d 996. In such cases, the jury can return a general verdict on the overall charge of first-degree murder. *Id.* In this case, the jury returned a general verdict on the overall charge of first-degree murder, and it is not possible to discern whether the verdict was based on willful and deliberate murder or on felony murder. Under *Salazar*, even though the underlying theory can-

---

1. In addition, Defendant was charged with conspiracy to commit murder in the first degree, two counts of attempt to commit murder in the first degree, and tampering with evidence.

2. Defendant was also convicted of tampering with evidence, for which he was sentenced to eighteen months' imprisonment.

not be discerned, the general verdict of guilty of first-degree murder is acceptable. *Id.* Therefore, the trial court could not sentence Defendant for willful and deliberate murder; the trial court was limited to sentencing Defendant for first-degree murder.

{7} Our responsibility on appeal, when a double jeopardy issue is raised involving a general verdict, is to determine whether *any* of the alternative theories violates double jeopardy. *State v. Foster*, 1999–NMSC–007, ¶ 27, 126 N.M. 646, 974 P.2d 140. In *Foster*, the Court was confronted with a similar situation. The defendant was convicted of felony murder, aggravated kidnaping, and armed robbery. *Id.* ¶ 1. The jury was instructed on alternative theories, but it returned a general verdict that did not indicate on which theories it relied in convicting the defendant. *Id.* ¶ 2. The defendant maintained that one of the alternative theories underlying aggravated kidnaping and armed robbery, when combined with his felony murder conviction, subjected him to double jeopardy. *Id.* ¶¶ 30, 37.

{8} On review, the Court determined that they were required to "reverse a conviction if one of the alternative bases for the conviction provided in the jury instructions is legally inadequate because it violates a defendant's constitutional right to be free from double jeopardy." *Id.* ¶ 2. The Court reasoned, " 'Jurors are not generally equipped to determine whether a particular theory of conviction submitted to them is contrary to law . . . .' " *Id.* ¶ 28 (quoting *State v. Olguin*, 118 N.M. 91, 98, 879 P.2d 92, 99 (Ct.App. 1994)) (alteration in original) (citations and quotation marks omitted).

{9} The Court then reviewed the aggravated kidnaping and armed robbery charges under the theories that the defendant claimed subjected him to double jeopardy. After reviewing the aggravated kidnaping charge, the Court determined that there was no double jeopardy problem. *Id.* ¶ 35. However, after reviewing the armed robbery charge, the Court determined that a double jeopardy problem existed under one of the alternative theories. *Id.* ¶¶ 37, 40. For purposes of a double jeopardy analysis, the Court presumed that the jury relied on the problematic theory, and thus the Court reversed the conviction for armed robbery. *Id.* ¶ 40.

{10} In the present case, we must examine whether either of the alternative theories of first-degree murder would subject Defendant to double jeopardy. *See id.* ¶ 27. If double jeopardy is violated, we must vacate the conviction for the lesser offense. *Id.* We begin our analysis with the felony murder conviction, which is dispositive of this issue. The double jeopardy clause of the Fifth Amendment to the United States Constitution provides: "[N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb . . . ." U.S. Const. amend. V; *see also* N.M. Const. art. II, § 15 (providing for double-jeopardy protection). The clause is applicable to the States through the due process clause of the Fourteenth Amendment. *Benton v. Maryland*, 395 U.S. 784, 794, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969).

{11} Among its protections, the double jeopardy clause protects a defendant against multiple punishments for the same offense. *State v. Lynch*, 2003–NMSC–020, ¶ 9, 134 N.M. 139, 74 P.3d 73. In cases where the defendant is charged with violation of multiple statutes for the same conduct ("double-description" cases), we must determine whether the legislature intended to authorize multiple punishments for the same offense. *State v. Frazier*, 2007–NMSC–032, ¶ 18, 142 N.M. 120, 164 P.3d 1. In *Frazier*, we clarified the law in New Mexico regarding multiple punishments for first-degree felony murder and the predicate felony, holding that "the predicate felony is always subsumed into a felony murder conviction, and no defendant can be convicted of both." *Id.* ¶ 1. Looking closely at our felony murder statute, we determined that the requirement for felony murder—that the killing happened during the commission of a felony—essentially means that in every felony murder case the conduct underlying both the felony murder and the predicate felony will always be unitary conduct. *Id.* ¶¶ 22–23. We also recognized that such unitary conduct cannot sustain multiple punishments. *Id.* ¶ 16 (citing *State v. Contreras*, 120 N.M. 486, 491, 903 P.2d 228, 233 (1995)). The reasoning is that

one cannot be convicted of felony murder unless the State proves all the elements of the underlying felony, and thus the legislature intended the underlying felony to be considered a lesser included offense within felony murder. *Id.* (citing *Whalen v. United States*, 445 U.S. 684, 694 n. 8, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980)).

{12} When examining Defendant's conviction for murder in the first degree based on the theory of felony murder, we find that, under *Frazier*, Defendant was subjected to double jeopardy. The predicate felony of shooting at a motor vehicle is subsumed into the felony murder conviction, and Defendant cannot be convicted of both. *See Frazier*, 2007–NMSC–032, ¶ 1, 142 N.M. 120, 164 P.3d 1. Because the alternative theory of first-degree felony murder subjects Defendant to double jeopardy, we therefore vacate the predicate felony conviction, shooting at a motor vehicle. *State v. Santillanes*, 2001–NMSC–018, ¶ 28, 130 N.M. 464, 27 P.3d 456 ("[D]ouble jeopardy requires that the lesser offense merge into the greater offense such that the conviction of the lesser offense, not merely the sentence, is vacated."). Because we find that the alternative theory of first-degree felony murder violates double jeopardy, we need not examine the alternative theory of willful and deliberate murder. *See Foster*, 1999–NMSC–007, ¶ 27, 126 N.M. 646, 974 P.2d 140 (holding that a general verdict cannot be upheld if *one* of the alternative theories for conviction subjects a defendant to double jeopardy).

## B. Ineffective Assistance of Counsel

{13} Defendant also argues that he was denied effective assistance of counsel because (1) trial counsel failed to move for a continuance so they could attempt to locate a missing witness, and (2) trial counsel failed to request an imperfect self-defense jury instruction. The State contends that Defendant has not made a prima facie case for ineffective assistance of counsel, and thus such a claim should be brought through habeas corpus proceedings. We agree with the State.

{14} In order to prevail on an ineffective assistance of counsel claim, a defen-dant must show deficiency on the part of counsel and that such deficiency resulted in prejudice. *State v. Bernal*, 2006–NMSC–050, ¶ 32, 140 N.M. 644, 146 P.3d 289 (citing *Strickland v. Washington*, 466 U.S. 668, 690, 692, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). There is a general presumption that trial counsel provided effective assistance. *Id.* (citing *Strickland*, 466 U.S. at 690, 104 S.Ct. 2052). On appeal, we will not second-guess counsel's trial strategy. *Lytle v. Jordan*, 2001–NMSC–016, ¶ 43, 130 N.M. 198, 22 P.3d 666 (quoting *State v. Gonzales*, 113 N.M. 221, 230, 824 P.2d 1023, 1032 (1992)) (quotation marks omitted). The presumption of effective assistance will remain intact as long as there is a reasonable trial tactic explaining counsel's performance. *State v. Roybal*, 2002–NMSC–027, ¶ 21, 132 N.M. 657, 54 P.3d 61.

{15} Defendant has failed to establish a deficiency on trial counsel's part. Based on the record, the defense's overall trial strategy was to maintain Defendant's innocence. During closing argument, trial counsel stated that Defendant "didn't shoot anybody," that he "never fired a weapon at the van," and that Defendant was "innocent." Both of Defendant's arguments for ineffective assistance of counsel would require us to second-guess this trial strategy, which we will not do. Defendant contends on appeal that the missing witness was present inside the trailer during the altercation and would have testified that Defendant and his brother were "attacked by the Montour family." This testimony would support a theory of justifiable homicide, not a theory of innocence. In addition, had the jury been instructed on imperfect self-defense, it would have been in direct conflict with the defense trial strategy of maintaining Defendant's innocence. Thus, it appears that trial counsel did not move for a continuance to pursue the missing witness and did not request a jury instruction on imperfect self-defense because such actions did not support the defense trial strategy.

{16} While Defendant has failed to establish a prima facie case of ineffective assistance of counsel, Defendant can still pursue habeas proceedings on this issue. *State v.*

*Martinez*, 1996–NMCA–109, ¶ 25, 122 N.M. 476, 927 P.2d 31 ("This Court has expressed its preference for habeas corpus proceedings over remand when the record on appeal does not establish a prima facie case of ineffective assistance of counsel.").

## C. Self–Defense and Defense of Habitation

{17} Defendant contends that he was entitled to jury instructions on self-defense and defense of habitation, and that the trial court committed reversible error in denying such instructions. The State points out that Defendant never requested jury instructions on self-defense or defense of habitation, and that trial counsel explicitly rejected such instructions. Accordingly, the State maintains that Defendant did not preserve his claim of error, and in addition, that such instructions were not supported by the evidence.

{18} We initially note that Defendant did not request jury instructions on either self-defense or defense of habitation. Defendant first raised these issues in a post-trial motion for a new trial. However, we find that even if Defendant had requested and been denied such jury instructions by the trial court, there would be no error because there was insufficient evidence to warrant such instructions.

{19} In order to warrant jury instructions on self-defense and defense of habitation, there must be evidence to support such instructions. *See State v. Gaines*, 2001–NMSC–036, ¶ 5, 131 N.M. 347, 36 P.3d 438 (stating that a defendant is not entitled to jury instructions on his or her theory of the case if no evidence exists to support it). Furthermore, the evidence must support every element of the defense. *State v. Emmons*, 2007–NMCA–082, ¶ 7, 141 N.M. 875, 161 P.3d 920. Whenever there is even the slightest evidence that the defendant killed in self-defense, the instruction should be given. *State v. Sutphin*, 2007–NMSC–045, ¶ 22, 142 N.M. 191, 164 P.3d 72. However, the evidence must be sufficient to allow reasonable minds to differ as to all elements of the offense. *State v. Lopez*, 2000–NMSC–003,

¶ 23, 128 N.M. 410, 993 P.2d 727 (citation and quotation marks omitted).

{20} An instruction on self-defense requires evidence that (1) "the defendant was put in fear by an apparent danger of immediate death or great bodily harm," (2) "the killing resulted from that fear," and (3) the defendant acted reasonably when he or she killed. *Id.* ¶ 23 (citation and quotation marks omitted).

{21} An instruction on defense of habitation requires evidence that (1) defendant believed that the commission of a felony in defendant's home was immediately at hand, (2) defendant believed it was necessary to kill the intruder to prevent the commission of the felony, and (3) the defendant acted reasonably. UJI 14–5170 NMRA.

{22} Despite the State's and Defendant's dispute over the details of the facts leading up to the shootings, it is clear that the victims were shot while they were in their van, driving away from Defendant's trailer. If at any point Defendant was put in fear by an appearance of immediate death or great bodily harm, that fear could not have been present when the victims were fleeing in their van. Additionally, the victims could not have been attempting to commit a felony inside Defendant's home while they were fleeing in their van. *State v. Niewiadowski*, 120 N.M. 361, 366, 901 P.2d 779, 784 (Ct.App.1995) (holding that evidence that the defendant shot at two men as they ran away from him was insufficient to support a defense of habitation instruction). Overall, the evidence was insufficient to support a self-defense or defense of habitation instruction.

## III. CONCLUSION

{23} For the foregoing reasons, we vacate Defendant's conviction for shooting at a motor vehicle resulting in great bodily harm. We find that Defendant has not made a prima facie case for ineffective assistance of counsel. We also reject Defendant's argument that the trial court erred in not issuing jury instructions on self-defense and defense of habitation. We therefore affirm Defen-

dant's convictions of first-degree murder and tampering with evidence.

{24} IT IS SO ORDERED.

WE CONCUR: PATRICIO M. SERNA, PETRA JIMENEZ MAES, RICHARD C. BOSSON, Justices, and RICHARD E. RANSOM (Pro Tem).